## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:

**BETTEROADS ASPHALT, LLC;**
**BETTERECYCLING CORPORATION**,

   Appellants,

     v.

**FIRSTBANK PUERTO RICO; BANCO SANTANDER DE PUERTO RICO; THE ECONOMIC DEVELOPMENT BANK FOR PUERTO RICO, AND BANCO POPULAR DE PUERTO RICO**,

   Appellees.

**CASE NO.**: 19-2019 (DRD)

CONSOLIDATED WITH:

**CASE NO.**: 19-2021 (DRD)

## OPINION AND ORDER

Pending before the Court are two *Urgent Motion for Stay Pending Appeal of Chapter 11 Proceedings* filed by Betteroads Asphalt, LLC ("Betteroads") and Betterecycling Corporation ("Betterecycling"; jointly with Betteroads, "Involuntary Debtors"). *See* Case Nos. 19-2019 at Docket No. 11 and 19-2021 at Docket No. 8.[1] Involuntary Debtors request the Court to enter an order staying the ongoing Chapter 11 proceedings currently being held before the Bankruptcy Court while the instant appeal is pending.

---

[1] On May 19, 2020, Case Nos. 19-2019 and 19-2021 were consolidated. *See* Case No. 19-2019 at Docket No. 60. The petitions to stay were filed by Appellants -individually- in each of said cases before the consolidation; however, both petitions are virtually identical. The Court notes that when discussing the "substantial possibility" prong, Betteroads included an additional argument as to the "denial of discovery on competitors" in Case No. 19-2019 which was not at issue in Case No. 19-2021. Further, the motion practice that followed from both parties (oppositions and replies) are also nearly identical. *See* Case No. 19-2019 at Docket Nos. 37 and 43; Case No. 19-2021 at Docket Nos. 24 and 32. Finally, Appellees' Sur-Reply was filed in the Lead Case, after consolidation, at Case No. 19-2019 at Docket No. 63. Consequently, throughout this *Opinion and Order*, the Court will discuss and resolve both *Urgent Motion for Stay Pending Appeal of Chapter 11 Proceedings* as if they were one.

In essence, to justify their petition, Involuntary Debtors contend that the matters addressed through the Chapter 11 proceedings are "so closely related to the pending appeal that they impermissibly interfered with [Involuntary Debtors'] rights in its appeal". Case No. 19-2019, Docket No. 11 at 1. To that end, Involuntary Debtors propose that the pending Chapter 11 proceedings should be stayed  as a "matter of right" or, alternatively, should be stayed under the applicable standard of motions to stay pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure since "there is likelihood of succeed; there is a clear and irreparable harm; granting the stay will not cause substantial harm to other parties and the relief requested is not contrary to the public interest". *Id.* at 4. *See* Fed. R. Bankr. P. 8007. For the reasons discussed below, Involuntary Debtors' request for stay is hereby **DENIED**.

## I.   **Relevant Procedural Background**

1. On June 9, 2017, two involuntary bankruptcy petitions, under title 11 of the United States Bankruptcy Code, were commenced against Involuntary Debtors. *See* Case Nos. 17-04156 & 17-04157. [2]

2. In the early stages of the involuntary proceedings, Involuntary Debtors filed *Motions to Dismiss*. *See* Case No. 17-04156 at Docket No. 46 and Case No. 17-04157 at Docket No. 27.

3. On November 30, 2018 the Bankruptcy Court entered a joint *Opinion and Order* for both involuntary petitions; the *Motions to Dismiss* were, in part, denied. Essentially, the Bankruptcy Court determined that: (1) the Petitioning Creditors satisfied the three-prong requirement for filing the involuntary petitions; (2) bad faith is an independent cause for dismissal of an involuntary petition; and (3) the Involuntary Debtors failed to show that dismissal pursuant to section 305 (a)(1) abstention is in the best interest of both the creditors and the debtor. *See* Case No. 17-04156 at Docket No. 271 and Case No. 17-04157 at Docket No. 206. Further, the Bankruptcy Court determined that it would schedule an evidentiary hearing to determine "whether or not the involuntary petitions were filed in bad faith".

4. The evidentiary hearings were held on June 27, 2019, July 15, 2019, July 17, 2019 and July 18, 2019. At the completion of Involuntary Debtor's case in chief, Appellees requested an

---

[2] The involuntary petitions were subscribed by Appellees along with St. James Security Services, Inc., Sargeant Marine, Inc., Sargeant Trading, Ltd., Facsimil Paper Connection Corp., Champion Petroleum, Inc., Control Force, Corp. (jointly, "Petitioning Creditors").  *See* Case No. 17-04157, Docket No. 206 at 4-5.

entry of judgment on partial findings, pursuant to Rule 7052 (c) of the Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052(c). In essence, Appellees contested that Involuntary Debtors had failed to meet their burden of proving that the involuntary petitions were filed in bad faith.

5.  Afterwards, on October 11, 2019 the Bankruptcy Court entered an *Opinion and Order* for both cases where it determined that the involuntary petitions where not filed in bad faith. *See* Case No. 17-04156 at Docket No. 520 and Case No. 17-04157 at Docket No. 362.

6.  Moreover, on October 11, 2019, the Bankruptcy Court entered *Orders for Relief* for both involuntary petitions. *See* Case No. 17-04156 at Docket Nos. 521 and 522; and Case No. 17-04157 at Docket No. 363.

7.  On October 29, 2019, Involuntary Debtors filed individual notices of appeal before the District Court. *See* Case No. 19-2019 at Docket No. 1 and Case No. 19-2021 at Docket No. 1.

8.  On November 4, 2019, Involuntary Debtors filed *Motions for Stay Pending Appeal* before the Bankruptcy Court. See Case No. 17-04156 at Docket No. 569 and Case No. 17-04157 at Docket No. 392).

9.  On December 6, 2019, the Bankruptcy Court entered an *Opinion and Order* denying the Involuntary Debtors request to stay. *See* Case No. 17-04156 at Docket No. 632 and Case No. 17-04157 at Docket No. 443. In sum, the Bankruptcy Court determined that neither the divestiture doctrine nor Rule 8007 of the Federal Rules of Bankruptcy Procedure warranted Involuntary Debtors' petition.

## II.   Analysis

### A.   Involuntary Debtor's request for stay pending appeal under the Divestiture Doctrine.

#### a.   *General Standard.*

The   Supreme   Court   has   stated   that   "[t]he filing of   a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) *see*, *also*, Watson v. Boyajian (In re Watson), 403 F. 3d 1, 6 (1st Cir. 2005). However, the Supreme Court has clarified that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." Hamer v. Neighborhood Hous. Servs. of Chicago, 138 S. Ct. 13, 17, 199 L. Ed. 2d 249 (2017);

Kontrick v. Ryan, 540 U.S. 443, 452-53 (2004). Consequently, "because the judge-made divestiture rule isn't based on a statute, it's not a hard-and-fast jurisdictional rule." United States v. Rodriguez-Rosado, 909 F.3d 472, 477 (1st Cir. 2018).

The divestiture doctrine "is rooted in concerns of judicial economy, crafted by courts to avoid the confusion and inefficiency that would inevitably result if two courts at the same time handled the same issues in the same case." United States v. Rodriguez-Rosado, 909 F.3d 472, 477–78 (1st Cir. 2018); see, also, Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 790 (9th Cir. 2018); Watchtower Bible & Tract Soc. of New York, Inc. v. Colombani, 712 F.3d 6, 11 (1st Cir. 2013) ("'Allowing more than one court to take charge of a case at any given moment often disserves the interests of comity and judicial economy.'"). "Hence its application turns on concerns of efficiency and isn't mandatory." United States v. Rodriguez-Rosado, supra, at 478.

The First Circuit has been forthright in its interpretation of the divestiture doctrine; to that end, it has stated that "the filing of a notice of appeal does not divest the district court of all authority." United States v. Carpenter, 941 F.3d 1, 6 (1st Cir. 2019); see, also, 16A C. Wright, A. Miller, E. Cooper & C. Struve, *Federal Practice and Procedure*, § 3949.1 (5th ed. 2019) ("[t]he restriction on district court action encompasses only the **matters that are comprehended within the appeal**.")(emphasis ours); CGC Holding Co., LLC v. Hutchens, 780 F. App'x 604, 606 (10th Cir. 2019); United States v. Madrid, 633 F.3d 1222, 1227 (10th Cir. 2011). Therefore, to apply the divestiture doctrine, the Court must determine "whether the subject matter presented in the appeal is so 'closely related' to the issues raised in the motion that the entry of the order 'impermissibly interfere[s]' with the appellant's rights in its appeal." In re Old Cold, LLC, 602 B.R. 798, 823 (B.A.P. 1st Cir. 2019).

### b. *Application.*

After the Bankruptcy Court entered the *Orders of Relief*, the bankruptcy proceedings under Chapter 11 "commenced" for all intents and purposes. Involuntary Debtors contend that, through the Chapter 11 proceedings, they have been submitted to "a variety of contested matters which impermissible interfered" with their rights on appeal. Specifically, these "contested matters" are: (1) the right of any party to request the appointment of a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104 ; (2) the applicability of any cash collateral restriction pursuant to 11 U.S.C. § 363 (c); (3) the filing of the Chapter 11 plan pursuant to 11 U.S.C. § 1121; (4) the assumption or rejection of nonresidential leases pursuant to 11 U.S.C. § 365(d); (5) the retention of the appointment of counsel pursuant to 11 U.S.C. § 267; and (6) the various duties imposed to a debtor-in-possession during the Chapter 11 proceedings. *See* Case No. 19-2019, Docket No. 11 at 13-14.

In opposition, Appellees argue that Involuntary Debtors are not seeking "to stay any of the Issues on Appeal", rather that they "request a different, and unfounded remedy entirely-namely that, pending resolution of the Appeal, the District Court suspend all of the chapter 11 proceedings which already have been underway for more than four (4) months". Case No. 19-2019, Docket 37 at 13. To support their reasoning, Appellees contend that the divestiture doctrine should only be applied in limited instances which do not encompass the remedy requested by Involuntary Debtors. Further, Appellees contested the case law provided by Involuntary Debtors and offered multiple examples of rulings where Chapter 11 proceedings have not been stayed pending appeals.

On the other hand, as previously stated, the Bankruptcy Court already denied a request of stay filed by the Involuntary Debtors. It is worthy to note that the divestiture doctrine argument was also brought before the Bankruptcy Court. In December 6, 2019's *Opinion and Order*, the Bankruptcy Court stated that "[a]t this juncture, there is no underlying motion of legal remedy being requested that parallels the legal issues before the appellate forum. Therefore, there is no

subsequent opinion and order or legal issue that is before the court that would modify or be inconsistent with the Opinions and Orders that are currently pending on appeal". Case No. 19-2019, Docket No. 37-1 at 12.

The Court finds that the "contested matters" highlighted by Involuntary Debtors are obviously related to the matters on appeal; since the appeals are contesting the validity of the involuntary petitions that paved the way to the entry of the *Orders of Relief* that "commenced" the bankruptcy proceedings under Chapter 11.[3] However, the Court disagrees with Involuntary Debtors' conclusion that this relationship makes the "contested matters" so "closely related" to the issues on appeal that they would "impermissibly interfere" with their rights.

Courts have "cautioned against a 'broad rule that a bankruptcy court may not consider any request which either directly or indirectly touches upon the issues involved in a pending appeal and may not do anything which has any impact on the order on appeal.'" In re G-I Holdings, Inc., 568 B.R. 731, 763 (Bankr. D.N.J. 2017); *see*, *also*, In re Scopac, 624 F.3d 274, 280 (5th Cir. 2010). Said reasoning is premised on the fact that "[t]he application of a broad rule that a bankruptcy court may not consider any request filed while an appeal is pending has the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner." In re Whispering Pines Estates, Inc., 369 B.R. 752, 758 (B.A.P. 1st Cir. 2007).

Although Involuntary Debtors' notices of appeal address over a dozen orders entered by the Bankruptcy Court, the crux of their contentions is whether the Bankruptcy Court erred when it denied their *Motions to Dismiss* the involuntary petitions. Specifically, the Involuntary Debtors

---

[3] The Court finds that if this relationship alone where to be enough to warrant the stay of an appeal, the discretion granted to a Court under the divestiture doctrine would disappear in every case where the validity of an involuntary petition is questioned. *See*, *e.g.*, In re Acis Capital Mgmt., L.P., 604 B.R. 484, 524 (N.D. Tex. 2019)("[T]o conclude that Neutra's appeal of the orders for relief divested the bankruptcy court of jurisdiction to confirm the Plan would be to hold that whenever an order for relief is entered, any disappointed litigant—even a litigant who lacks standing to appeal—can bring the bankruptcy case grinding to a halt. But the divestiture doctrine is not intended to "cede control of the conduct of a chapter 11 case to disappointed litigants. This cannot be, and is not, the law.").

challenge the Bankruptcy Court's determinations as to Petitioning Creditor's compliance with the number of petitioners and jurisdictional requirements for filing valid involuntary petitions under Chapter 11 of the Bankruptcy Code; and the lack of bad faith in the filing of said involuntary petitions.

Considering these are the core issue on appeal, the Court finds that Involuntary Debtors have failed to demonstrate how the: (1) appointment of a Chapter 11 Trustee; (2) applicability of cash collateral restrictions; (3) filing of a Chapter 11 plan; (4) assumption or rejection of unexpired of nonresidential leases; (5) retention of appointment of counsel; and (6) imposition of duties imposed to a debtor in possession are "closely related" to the Bankruptcy Courts determination pertaining to the validity of the involuntary petitions. [4] All of said "contested matters" relate to the administration of Chapter 11 proceedings which arise once an order for relief is entered; they do not relate to the validity of the involuntary petitions. In agreement with the Bankruptcy Court, the Court finds that these "contested matters" will not produce legal issues or opinion and orders "that would modify or be inconsistent with the Opinions and Orders that are currently pending on appeal". Case No. 19-2019, Docket No. 37-1 at 12. Consequently, for purposes of this analysis, these issues are not "closely related" with the issues or rights of Involuntary Debtors in the instant appeals.

Furthermore, when applying the divestiture doctrine, the Courts have recognized a distinction "between acts undertaken to enforce the judgment and acts which expand upon or alter it; the former being permissible and the latter prohibited." In re Prudential Lines, Inc., 170 B.R.

---

[4] The Court notes that Involuntary Debtors allude to case law, in the context of arbitration procedures, that conceptually support their contention that a stay should be granted if the commencement of an action is under questions. See, specifically, Lummus Co. v. Commonwealth Oil Refining Co., 273 F.2d 613 (1st Cir. 1959). However, considering the fact that said case law was developed under a considerably different legal context and factual scenario, the Court does not agree with Involuntary Debtors' contention that it is binding legal precedent that must be applied in this case.

222, 243 (S.D.N.Y. 1994) (*citing* <u>N.L.R.B. v. Cincinnati Bronze, Inc.</u>, 829 F.2d 585, 588 (6th Cir.1987)); *see*, *also*, <u>In re Sabine Oil & Gas Corp.</u>, *supra*, at 679 ("[t]he application of the distinction in the case law between acts of enforcement and acts of alteration 'is most germane in the context of a Chapter 11 bankruptcy case which involves the court's issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment.' *Prudential Lines,* 170 B.R. at 244."). Taking into account that the "contested matters" relate to the administration of the Chapter 11 proceedings, the Court finds that they constitute issues that arise out of the enforcement of the *Orders for Relief*.

The Court understands that the Bankruptcy Court is within its power to continue the enforcement of the *Orders from Relief* through the administration of the Chapter 11 proceedings since it has been recognized that "[d]uring the pendency of an appeal of a bankruptcy court order, however, the bankruptcy court is not divested of jurisdiction to enforce or implement the order being appealed, nor is the bankruptcy court divested of jurisdiction 'to decide issues and proceedings different from and collateral to those involved in the appeal.'" <u>In re Sabine Oil & Gas Corp.</u>, 548 B.R. 674, 679 (Bankr. S.D.N.Y. 2016); *see*, *also*, <u>In re Bd. Of Directors of Hopewell Int'l Ins. Ltd.</u>, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001). Consequently, the Court further finds that attending to these matters does not "impermissibly interfere" with Involuntary Debtors' rights on appeal.

Pursuant to the above, the Court -in its sound discretion- will not apply the divestiture to stay the Chapter 11 proceedings that are underway before the Bankruptcy Court.

**B.** **<u>Involuntary Debtor's request for stay pending appeal under Rule 8007 of the Federal Rules of Bankruptcy Procedure.</u>**

Alternatively, Involuntary Debtors request the Court to grant the stay, pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 8007. Similar to the

application of the divestiture doctrine, "[t]he allowance of a motion for stay pending appeal is discretionary". In re Otero Rivera, *supra*, at 426; *see*, *also*, In re MJS Las Croabas Props., 2015 WL 1651085 at *2 (Bankr. D.P.R. Apr. 8, 2015). To that end, the Court has substantial discretion "'to grant (or deny) a stay pending appeal on such terms as it may deem appropriate, subject to an abuse of discretion standard of review.'" In re L & R Dev. & Inv. Corp., 2017 WL 5125529, at *1 (Bankr. D.P.R. Nov. 3, 2017); *see*, *also*, In re Triple A & R Capital Inv. Inc., 2015 WL 1138485, at *1 (Bankr. D.P.R. 2015) (*citing* In re Target Graphics, Inc., 372 B.R. 866 (E.D. Tenn. 2007)).

The party requesting the stay "bears the burden of showing that the circumstances justify an exercise of that discretion." Nken v. Holder, 556 U.S. 418, 433–344 (2009). Furthermore, since a stay pending appeal is an "extraordinary remedy", it requires a **substantial showing** from the movant. *See*, *e.g.*, In re MEDSCI Diagnostics, Inc., 2011 WL 280866, at *3 (Bankr. D.P.R. Jan. 25, 2011); In re Lickman, 301 B.R. 739 (Bankr.M.D.Fla.2003).

When evaluating petitions of this nature, Courts resort to the traditional four-part standard applicable to preliminary injunctions. *See*, *e.g.*, Acevedo–García v. Vera–Monroig, 296 F.3d 13, 16 (1st Cir.2002); Doe #1 v. Trump, 957 F.3d 1050, 1058 (9th Cir. 2020). To that end, "[t]o obtain a preliminary injunction, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Bruns v. Mayhew, 750 F.3d 61, 65 (1st Cir. 2014) (*citing* Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Therefore, the Court must consider:

> (1) the likelihood of the movant's success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest.

Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 671 F.3d 12, 19 (1st Cir. 2011); *see*, *also*, Sindicato Puertorriqueño de Trabajores v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012). When implementing this test, the four factors "are weighed according to the unique circumstances of each case to ensure a just result." In re Otero Rivera, *supra*, at 427. However, "[f]ailure to satisfy even one of those requirements justifies denial of the stay." In re Fraterfood Serv., Inc., 2015 WL 5317601, at *1 (Bankr. D.P.R. Sept. 11, 2015); In re Efron, 535 B.R. 516, 518 (Bankr. D.P.R. 2014); In re MEDSCI Diagnostics, Inc., *supra*, at *3 (citations omitted). Below, the Court will apply the referenced factors to the instant petition.

### a. *Likelihood of Involuntary Debtor's Success on the Merits.*

The Supreme Court has stated that the first two factors are the "most critical". *See* Nken v. Holder, *supra*. "Both require a showing of more than mere possibility. Plaintiffs must show a strong likelihood of success, and they must demonstrate that irreparable injury will be likely absent an injunction." Respect Maine PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010). Consequently, the First Circuit has held that "'[t]he *sine qua non* [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits.'" Acevedo–García v. Vera–Monroig, *supra*, at 16; *see*, *also*, In re Catholic Sch. Employees Pension Tr., 2018 WL 1577704, at *2 (Bankr. D.P.R. Mar. 28, 2018). "[W]hat matters ... is not the raw amount of irreparable harm [a] party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits." Puerto Rico Hospital Supply, Inc. v. Boston Scientific Corp., 426 F.3d 503, 507 n.1 (1st Cir. 2005).[5] Furthermore, the Court notes that, in the context of bankruptcy matters, the Bankruptcy Court of Puerto Rico has consistently determined that the party seeking appeal must

---

[5] "[I]if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Air Line Pilots Ass'n, Int'l v. Guilford Transp. Indus., Inc., 399 F.3d 89, 95 (1st Cir. 2005) (*citing* New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).

show a "substantial" or "strong" case on appeal. *See, e.g.*, <u>In re Babilonia Santiago</u>, 2020 WL 504747, at *2 (Bankr. D.P.R. Jan. 30, 2020); <u>In re Catholic Sch. Employees Pension Tr.</u>, *supra*, at *3.[6]

In their request for stay, the Involuntary Debtors focused the discussion on three matters which related to: (a) the Bankruptcy Court's evaluation of the evidence presented during the evidentiary hearing; (b) the Bankruptcy Court's determination as to the satisfaction of the requirements for filing involuntary petitions; and (c) the Bankruptcy Court's determination as to various discovery matters. The Court reviews them individually.

### i. The Bankruptcy Court failed to apply the totality of circumstances standard and evaluate the totality of the admitted evidence.

Involuntary Debtors argue that the Bankruptcy Court did not apply the "totality of circumstances" standard to evaluate the evidence provided to determine whether the involuntary petitions had been filed in bad faith, pursuant to *In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328 at 334 (3rd Cir. 2015). *See* Case No. 19-2019, Docket 11 at 19. Specifically, Involuntary Debtors contest that the Bankruptcy Court's October 11, 2019 *Opinion and Order* "reflects none weighting of the factors or conclusion of law that show the totality of the circumstances test to be applied. The *Opinion and Order* is mainly sustained by one witnesses' [sic] testimony transcript copied by the Court and a four-sentence long analysis". Case No. 19-2019, Docket No. 11 at 20. Further, Involuntary Debtors argue that the Bankruptcy Court "overlooked substantial evidence" since it was not specifically mentioned in said *Opinion and Order*.[7]

---

[6] Other Bankruptcy Courts, which fall within our circuit, have reached the same conclusion. *See, e.g.*, <u>In re Access Cardiosystems, Inc.</u>, 340 B.R. 656, 660 (Bankr. D. Mass. 2006); <u>In re Marrama</u>, 345 B.R. 458, 468 (Bankr. D. Mass. 2006).

[7] To contest said arguments, Appellees essentially contend that Involuntary Debtors failed to rebut, under the totality of the circumstances test, the presumption of good faith afforded to the filing of an involuntary petition. *See* Case No. 19-2019, Docket 37 at 29-40. Furthermore, Appellees reference parts of the testimonies and evidence provided during Involuntary Debtors' case in chief which demonstrated, to the Bankruptcy Court's satisfaction, that there was no bad faith involved in the filing of the involuntary petitions. To that end, Appellees proffer that the reasons for filing the

As previously stated, Involuntary Debtors requested the stay pending appeal before the Bankruptcy Court. The Court notes that the arguments brought forth by Involuntary Debtors before the Bankruptcy Court, are essentially the same as those pending before the Court. On December 6, 2019, the Bankruptcy Court entered an *Opinion and Order* and denied Involuntary Debtors' request. As to this matter, the Bankruptcy Court stated that in October 11, 2019's *Opinion and Order* -where it determined that the involuntary petitions where not filed in bad faith- that it "also employed the totality of circumstances test which is the same standard used when there are allegations that a debtor filed a voluntary petition in bad faith". Case No. 19-2019, Docket No. 37-1 at 22. Further, the Bankruptcy Court highlighted that it included "approximately eighty (80) pages of detailed minutes regarding the testimonies of the different witnesses, arguments before the court and bench rulings that had transpired during the evidentiary hearing". *Id.* at 23.

The Court finds unlikely that the Bankruptcy Court, after having made the referenced representations pertaining to the application of the "totality of the circumstances" test and the evaluation of the evidence provided during the evidentiary hearing, failed to do just that. At this time, the Court believes that the Bankruptcy Court's alleged "failure" to specifically reference every one of the factors in the "totality of the circumstances" test and outline each piece of evidence provided by Involuntary Debtors in its *Opinion and Order*, does not show that the Bankruptcy Court did not consider them. When examining the merits of the appeals, the Court will "review the bankruptcy court's legal conclusions de novo and its factual findings for clear error."

---

involuntary petitions were to "[s]top the depletion of the [Involuntary Debtors'] assets, stop transfers of property out of the [Involuntary Debtors'] estates for little or no consideration, stay the numerous pending litigation claims against the [Involuntary Debtors], obtain transparency, and to otherwise preserve and recover the [Involuntary Debtors'] assets for the benefit of their creditors including the Lenders". *Id.* at 31. Appellees also highlight the fact that the Bankruptcy Court's *Opinion and Order* attached approximately eighty (80) pages of minutes pertaining to the testimonies and evidence that was presented before the Court during the evidentiary hearing. *Id.* at 30.

In re Handy, 624 F.3d 19, 21 (1st Cir. 2010).[8] However, at this time, the Court finds that Involuntary Debtors' arguments as to the purported errors committed by the Bankruptcy Court are unlikely to result in reversal of the appealed determinations and, consequently, do not warrant the stay pending appeal.

### ii.   The Bankruptcy Court erred when it determined that the involuntary petitions satisfied the numerical requirement set by Section 303 (b)(1).

In essence, Involuntary Debtors argue that the financial institutions involved in the instant cases "lured" the Petitioning Creditors that filed the involuntary petitions through "discriminatory carve-out agreements". Furthermore, said Debtors assert that these purported "discriminatory carve-out agreements" are not valid within Chapter 11 proceedings. To that end, Involuntary Debtors reason that the Petitioning Creditors should be all counted as one petitioner; therefore, making the involuntary petitions noncompliant with the numerical requirement set by Section 303 (b) (1).

In opposition, Appellees contend that all of the requirements of Section 303 (b) were met.[9] Specifically, as to the "carve-out agreement" argument, Appellees argue that the use of these agreements was not indicative of bad faith since seeking "other creditors to join in the filing of an involuntary petition against Debtor is not improper course of conduct because their purpose was legitimate". *Id.* at 39. Moreover, Appellees highlight the fact that Involuntary Debtor's argument solely relies on *In re Iowa Coal Min. Co, Inc.*, 242 B.R. 661 (1999) and that the Bankruptcy Court

---

[8] The "clear error" standard of review implies that the Court will defer to the Bankruptcy Courts finding "unless, on the whole of the record, we form a strong, unyielding belief that a mistake has been made." In re Montreal, Maine & Atl. Ry., Ltd., 956 F.3d 1, 6 (1st Cir. 2020) (citing Gannett v. Carp (In re Carp), 340 F.3d 15, 22 (1st Cir. 2003)); *see, also*, Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 81 (1st Cir. 2012).

[9] Appellees agree with the Bankruptcy Court's determination that Petitioning Creditors' claims did not constitute "a single claim and this a single creditor entity for purposes of section 303 (b)". Case No. 19, Docket No. 37. Essentially, Appellees reasoning is based on the fact that Petitioning Creditors' claims stemmed "from final, firm and unappealable state court judgements". *Id*.

ruled -on two occasions- that said reference was inapposite to the instant cases; the Court considers this matter critical.

The record shows that Involuntary Debtors initially presented their "carve-out agreement" argument before the Bankruptcy Court through the motion practice related to their *Motions to Dismiss*. In the *Opinion and Order* entered on November 30, 2018, the Bankruptcy Court determined that *In re Iowa* was distinguishable from the instant cases and, consequently, did not support Involuntary Debtors' "carve-out agreement" argument. Afterwards, when requesting the stay of the Chapter 11 proceedings before the Bankruptcy Court, Involuntary Debtors -once again- raised this argument based solely on *In re Iowa*. The Bankruptcy Court doubled down on its prior determination as to the inapplicability of *In re Iowa* and found that Involuntary Debtors' analysis was "specifically tailored for their specific situation and devoid of any legal support." Case No. 19-2019, Docket No. 37-1 at 20.

In the request to stay before this Court, Involuntary Debtors raise the same contention and choose to rely solely on *In re Iowa* for a third time. However, Involuntary Debtor's do not contest the Bankruptcy Court's interpretation of *In re Iowa* nor do they explain why said case, although clearly distinguishable from the matter at hand, is applicable here. Consequently, the Court finds that Involuntary Debtors have not demonstrated that the Bankruptcy Court erred in its determination as to this argument and, therefore, have failed to show how the instant contention is likely to further its request for appeal on the merits. Consequently, the Court concludes that this argument is unlikely to result in reversal of the appealed determinations and does not warrant the stay pending appeal.

### iii.   *Abuse of discretion on discovery and management of the case.*

Involuntary Debtors alleged that the Bankruptcy Court abused its discretion with regards to its handling of various discovery disputes. First, Involuntary Debtors argue that the Bankruptcy

14

erred by not allowing Betteroads to perform discovery with regards to the "ill" motives that Petitioning Creditors, Sargeant Marine & Sargeant Trading, might have had for filing the involuntary petitions. *See* Case No. 19-2019, Docket No. 11 at 24-27. Second, Involuntary Debtors allege that the Bankruptcy Court "left unattended an[d] unresolved crucial motions regarding discovery, some even about two years, only to resolve[] them on the eve or same date of the evidentiary hearing" *Id.* at 27. Specifically, Involuntary Debtors highlight the denial of an extension of the discovery schedule, a request to convert the evidentiary hearing into a status hearing to discuss discovery dispute, and the denial of a request for protective orders. Third, Involuntary Debtors also objects that the Bankruptcy Court made the parties conduct "parallel discovery with evidentiary hearing"'. That is, Involuntary Debtors alleged that they didn't have the opportunity to finish all discovery prior to the evidentiary hearing in this case. "The Bankruptcy Court severally impaired the due process in granting factual discovery during and while moving forward parallel with trial". *Id.* at 29.

Appellees contend that Involuntary Debtors will not succeed in the merits of the appeal as to these "issues" since "the discovery schedules in these cases were agreed to by the [Involuntary Debtors themselves], that they were afforded ample opportunity to take discovery, even between the Hearings, that they presented each and every witness that they requested at the Hearing, and that they obtained all discovery requested from the Petitioning Creditors". Case No. 19-2019, Docket No. 37 at 40.

The standard applicable to reviews of a Bankruptcy Court's discovery decisions is "abuse of discretion". Hence, the Court must highlight that the Bankruptcy Court's discretion as to this matter "is very wide". In re Carp, 340 F.3d 15, 22 (1st Cir. 2003); Brandt v. Wand Partners, 242 F.3d 6, 18 (1st Cir. 2001). Consequently, "only upon a clear showing of manifest injustice, that is,

where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." In re Celexa & Lexapro Mktg. & Sales Practices Litig., 915 F.3d 1, 17 (1st Cir. 2019) (*citing* Pina v. Children's Place, 740 F.3d 785, 791 (1st Cir. 2014)).

As to Betteroads' discovery petition into Sargeant Marine & Sargeant Trading motives for filing the involuntary petitions, in December 9, 2019's *Opinion and Order*, the Bankruptcy Court stated that

> "Betteroads ha[d] not clearly defined the improper purpose and this, did not permit for Betteroads to conduct discovery regarding Sargeant's affiliates. Sargeant's affiliates may be Bettoroads' competitors in the asphalt industry. However, that does not establish that there was collusion amongst Sargeant's affiliates and the Syndicate Lenders to take the involuntary Debtors out of business or acquire their assets".

Case No. 19-2019, Docket No. 37-1 at 26. On the other hand, with regards to the motion for protective order, the Bankruptcy Court denied it on the first day of the evidentiary hearing after concluding that the requests became moot since it determined "that the petitioning creditors complied with the requirements to file the petition and that the issue remaining was if the involuntary petitions were filed in bad faith or for improper purpose, given that the court had determined that bad faith was a cause for dismissal under section 303". *Id*. at 27.

Involuntary Debtors' arguments suggest that they needed more time and evidence to present their bad faith arguments during the evidentiary hearing. However, discovery is not an eternal nor unlimited procedure. "It is well settled that the trial judge has broad discretion in ruling on pre-trial management matters," and, as previously stated, that a trial court's denial of discovery should be reviewed for abuse of its considerable discretion. In re Colon, 2008 WL 8664760, at *3 (B.A.P. 1st Cir. Nov. 21, 2008); *see*, *also*, Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996). At this juncture, the arguments provided by Involuntary Debtors fail to demonstrate to this Court an abuse of discretion on behalf of the Bankruptcy Court.

Although, a more thorough review of the record will take place in deciding the merits of the case, since these arguments seem insufficient to justify a reversal of the core issues in question, the Court finds that they do not weight in favor of granting the stay.

### b. *Involuntary Debtors' alleged "irreparable harm".*

Commonly, "irreparable harm" is defined as "an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d 56 (1st Cir. 2005). To establish that there is "irreparable harm" "the movant does not need to show that the injunctive relief will be fatal to the business, only that its legal remedies are inadequate." Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996); *see*, *also*, Charlesbank Equity Fund II, Ltd. P'ship v. Blinds to Go Inc., 370 F.3d 151, 162 (1st Cir. 2004) ("irreparable harm most often exists were a party has no adequate remedy at law.").

Moreover, "[t]o establish irreparable harm, a stay movant 'must demonstrate an injury that is neither remote nor speculative, but actual and imminent.'" In re Catholic Sch. Employees Pension Tr., 2018 WL 1577704, at *4 (Bankr. D.P.R. Mar. 28, 2018). Consequently, "simply showing some 'possibility of irreparable injury' fails to satisfy the second factor". Nken, *supra*, at 434-435. Finally, the Court must consider that a stay "'is not a matter of right, even if irreparable injury might otherwise result to the appellant'". *Id.* at 427.

As referenced in the divestiture doctrine discussion, Involuntary Debtors allege that they are subject to irreparable harm as a result of the various "contested matters" that are being dictated by the Bankruptcy Court in the Chapter 11 proceedings that are currently ongoing. Particularly, Involuntary Debtors contend that:

> [t]he injury caused by the continuation of this involuntary petition is actual and imminent. All future adjudications and scheduling to be made by this Court directly involve and execute an *Opinion and Order* and *Order for Relief* which adversely

> affect Betteroads right to appeal. Appellees are attempting to obtain or divest assets
> and control of the debtor through the bankruptcy mechanisms. The continuation of
> the Chapter 11 has the outmost risk to turn moot the pending appeal through various
> courses and remedies which certainly may hinder from administration through
> ownership.

Case No. 19-2019, Docket No. 11 at 32.

To counter said arguments, Appellees contend that Involuntary Debtors' arguments are insufficient as they have failed to establish "actual, imminent and irreparable harm". Specifically, Appellees argue that Involuntary Debtors claim "irreparable harm [that] would potentially arise form a hypothetical 'expiration of the exclusivity period' or 'filing competing plans' and other issues pending before the Bankruptcy Court. That purported harm is not 'actual and imminent.'" Case No. 19-2019, Docket No. 37 at 44. Furthermore, Appellees highlight the fact that Involuntary Debtors requested the stay from the Court over 4 months after filing the notices of appeal. By doing so, Appellees question the "emergency" nature of the petition as well as the "actual and imminent" character of the alleged irreparable harm. Finally, Appellees reference case law that suggests that Involuntary Debtors' mootness argument is insufficient to show irreparable harm.

As to this matter, the Bankruptcy Court concluded in its December 6, 2019 *Opinion and Order* that Involuntary Debtors' alleged "irreparable harms" are "speculative and premature". Case No. 19-2019, Docket No. 37-1 at 33. Also, as to the mootness of their potential appellate rights, the Bankruptcy Court concluded that the argument was "also premature given that the Involuntary Debtors will have the opportunity to object to any motions and legal remedies when the same are before the court this, safeguarding their due process and legal rights". *Id*.

The Court agrees with the Bankruptcy Court. Involuntary Debtors' motion practice has not revealed that the alleged "irreparable harms" are anything but speculative and premature at this juncture. Furthermore, Involuntary Debtors participation in the ongoing Chapter 11 proceedings

allows them to request the necessary legal remedies before the Bankruptcy Court as to the "contested matters" that they allege cause them said irreparable harm. To that end, the Court highlights that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90, 94 S. Ct. 937, 953, 39 L. Ed. 2d 166 (1974); see, also, In re Catholic Sch. Employees Pension Tr., supra, at *4.

On the other hand, various bankruptcy courts have agreed that the potential mootness of matters on appeal is not sufficient to demonstrate "irreparable harm". See, e.g., In re Mich. Produce Haulers, Inc., 2015 WL 1275387, at *1-*4 (Bankr. W.D. Mich. Mar. 19, 2015); ACC Bondholder Group v. Adelphia Comuns, Corp., 361 B.R. 337, 347 (Bankr. S.D.N.Y. 2007); In re Convenience USA, Inc., 290 B.R. 558, 563 (Bankr. M.D. N.C. 2003). Finally, although not determinative, the fact that Involuntary Debtors requested the stay to the Court months after the Bankruptcy Court denied the request for stay raises doubts pertaining to the "actual and imminent" nature of the alleged "irreparable harm". See, e.g., Beame v. Friends of the Earth, 434 U.S. 1310, 1313 (1977) ("The applicants' delay in... seeking a stay vitiates much of the force of their allegations of irreparable harm."); see, also, Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 968 (2nd Cir. 1995) ("where plaintiff seeking immediate, emergency relief delays in bringing suit, such delay may preclude emergency relief because "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury"). To that end, the Court finds that Involuntary Debtors have failed to satisfy the "irreparable harm" prong.

### III.   Conclusion

Pursuant to the above, the Court finds that Involuntary Debtors have failed to satisfy the first two (2) prongs of the four-part standard applicable to their request to stay. Consequently, it is

unnecessary for the Court to review the remaining two factors. *See*, *e.g.*, Weaver v. Henderson, 984 F.2d 11, 14 (1st Cir. 1993); *Coalition for Basic Human Needs v. King*, 654 F.2d 838, 841 (1st Cir. 1981); In re Otero Rivera, *supra*, 426–27 ("Failure to satisfy even one of those requirements justifies denial of the stay.". Therefore, Involuntary Debtors' *Urgent Motion for Stay Pending Appeal of Chapter 11 Proceedings* filed at Case No. 19-2019 at Docket No. 11 and 19-2021 at Docket No. 8, are hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on June 12, 2020.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge